1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANATOLY KADOSHNIKOS,

11              Petitioner,               No. CIV S-11-0763 KJM EFB P

12        vs.

13   JAMES D. HARTLEY, Warden,
                                          ORDER AND
14              Respondent.               FINDINGS AND RECOMMENDATIONS
     _____/

15

16          Petitioner is a state prisoner without counsel seeking an application for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.[1]  He challenges a 2009 conviction entered against him in

18   the Yolo County Superior Court on charges of lewd and lascivious acts on a child under the age

19   of fourteen.  He seeks relief on the grounds that the trial court's erroneous admission of evidence

20   violated his right to due process.  Upon careful consideration of the record and the applicable

21   law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

22   ////

23   _____

24        [1]  As respondent points out, petitioner has improperly named the People of the State of
     California as the respondent in this matter.  "A petitioner for habeas corpus relief must name the
     state officer having custody of him or her as the respondent to the petition."  *Stanley v.*
25   *California Supreme Court*, 21 F.3d 359, 360 (9th Cir.1994) (citing Rule 2(a), 28 U.S.C. foll.
     § 2254).  Accordingly, the court now substitutes in the correct respondent, James D. Hartley, the
26   Warden of Avenal State Prison, where petitioner is presently incarcerated.

**I.      Procedural Background**

On January 30, 2009, a first amended information was filed in the Yolo County Superior Court charging petitioner with two counts of committing a lewd or lascivious act on a child under the age of fourteen, in violation of Cal. Penal Code § 288(a).  Resp.'s Lodg. Doc. 7, Clerk's Transcript on Appeal (hereinafter CT), at 139-40.  On February 18, 2009, after a jury trial, petitioner was convicted on both counts.  *Id.* at 232.  On April 13, 2009, petitioner was sentenced to a term of eight years in state prison.  *Id.* at 216-17.

On April 15, 2009, petitioner filed a timely notice of appeal in the California Court of Appeal for the Third Appellate District.  *Id.* at 234.  By order dated April 12, 2010, the appellate court affirmed petitioner's conviction and sentence.  Resp.'s Lodg. Doc. 4.  On May 18, 2010, petitioner filed a petition for review in the California Supreme Court.  Resp.'s Lodg. Doc. 5. That petition was summarily denied by order dated June 23, 2010.  Resp.'s Lodg. Doc. 6. Petitioner commenced his federal habeas action by filing the instant petition in this court on March 21, 2011.

**II.     Factual Background[2]**

**FACTUAL AND PROCEDURAL BACKGROUND**

**A**

**The Charged Offenses**

The minor victim (minor) was six years old when she met defendant.  Her mother was dating defendant at the time.  During the time defendant dated minor's mother, defendant would go over to minor's house, where she and her family lived, and spend the night.  On the nights defendant stayed over, he slept in the same bed as minor and her mother; minor's mother slept in the middle with minor and defendant sleeping on either side of her.

---

[2]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.  Under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence.  *Pirtle v. Morgan*, 313 F.3d 1160, 1168 (9th Cir. 2002).  Although petitioner denies that these facts took place (*see* Dckt. No. 14 at 2-3), he has failed to rebut them by clear and convincing evidence.

In the mornings, after defendant spent the night and minor's
mother was in the kitchen, defendant touched minor sexually on
three different occasions.  During these occurrences, he put his
hands in her underwear, touched her vagina, and put his finger
inside her. On the third occasion, defendant grabbed minor's leg
and hit her when she refused his request to go to him.  Minor's
mother came in the room that time because she heard minor's cry,
and defendant "smiled like he was playing around."  The incidents
occurred over a period of a few weeks.  Minor's mother and
defendant ended their relationship about a month after the
incidents.

Minor did not tell anyone about the molestation until she told her
sister, Oksana, nine years later.  Defendant was charged with two
counts of committing a lewd or lascivious act on a child under age
14.

**B**

**The Uncharged Offense**

A. is defendant's 23-year-old daughter.  At trial, she testified
defendant molested her when she was 12 or 13 years old for a
period of four to five years.  Defendant would touch her breasts
over and under her clothes and suck on her breasts.  He also would
put his hands in her underwear and touch her vagina while
touching himself.  At the time, A. would sleep in the same bed as
defendant, and he would always put her on his lap.

In addition to the sexual abuse, A. also testified that defendant
physically and psychologically abused her.  Defendant would beat
her, slap her, and use his palm to hit her nose.  A. further testified
that defendant told her that her mother was a prostitute and was
dead, and he continuously refused to give her the documentation
she needed to get her United States citizenship.

At around 15 years old, A. moved out of defendant's house and
moved in with a friend.  A. did not tell anyone about the
molestation until she told the friend she lived with at the time.
When A. was 17 years old, she contacted Child Protective Services
regarding her molestation because defendant wanted her to move
back in with him.  She was afraid defendant would physically hurt
her again, and she wanted to get emancipated so she could get
married and go to school.  A. was subsequently referred to the
Sacramento County Sheriff's Department where Detective Kathryn
Dewante investigated her molestation allegations.  Detective
Dewante asked A. to make a pretext phone call to defendant.  But
A. never made the call, and her case was closed for lack of
corroboration or other evidence indicating the alleged acts actually
occurred.

3

In his in limine motions, the prosecutor moved to admit the evidence of defendant's prior uncharged sexual acts with A. under Evidence Code[3] section 1108.  Defendant opposed the motion on the ground the evidence should be excluded under section 352.  Specifically, defendant argued, "the evidence is of limited probative value, is likely to confuse issues and will cause an undue consumption of time."

During the hearing on the in limine motions, both the prosecutor and defense counsel submitted the issue on the briefs.  The trial court admitted the uncharged sex offense evidence involving A. stating:

"The [section] 352 issue, obviously, if the jury believes the [section] 1108 evidence, then it would be evidence that could be quite prejudicial.  But it's the type of prejudice that comes from it having probative value.  If it doesn't have probative value, then if the jury thought it didn't prove anything, then of course there wouldn't be any prejudice to it either.  So it's not that type of prejudice, which goes to other issues."

"Same thing with there being undue consumption of time or probability of confusion.  Those don't really enter into it either.  None of the [section] 352 issues come up in such a level that they substantially outweigh the probative value.  So I'll allow it in."

Defendant did not object to A.'s testimony during the trial.

Resp.'s Lodg. Doc. 4 (hereinafter Opinion) at 1-4.

## III.   Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

////

---

[3]  All further undesignated statutory references are to the Evidence Code.

4

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1  simply because that court concludes in its independent judgment that the relevant state-court

2  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3  application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v.*

4  *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

5  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

6  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

7  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

8  of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

9  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

10  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

11  state court's ruling on the claim being presented in federal court was so lacking in justification

12  that there was an error well understood and comprehended in existing law beyond any possibility

13  for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

14        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

15  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

16  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

17  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

18  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19  considering de novo the constitutional issues raised.").

20        The court looks to the last reasoned state court decision as the basis for the state court

21  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

22  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

23  previous state court decision, this court may consider both decisions to ascertain the reasoning of

24  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

25  a federal claim has been presented to a state court and the state court has denied relief, it may be

26  presumed that the state court adjudicated the claim on the merits in the absence of any indication

1   or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85.  This

2   presumption may be overcome by a showing "there is reason to think some other explanation for

3   the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

4   803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

5   support its conclusion, a federal habeas court independently reviews the record to determine

6   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

7   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

8   review of the constitutional issue, but rather, the only method by which we can determine

9   whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

10  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

11  there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S. Ct. at 784.

12          When it is clear, however, that a state court has not reached the merits of a petitioner's

13  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

14  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

15  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

16          **B.  Petitioner's Claim**

17          Petitioner's claim is contained in his petition for review filed in the California Supreme

18  Court, which he has attached to the form habeas petition filed in this court.  In essence, petitioner

19  claims that the trial court's decision to allow testimony by Angelika K. about his prior uncharged

20  acts of misconduct rendered his trial fundamentally unfair, in violation of the Due Process

21  Clause. Dckt. No. 1 at 19-45.  He argues that the testimony consumed an undue amount of time

22  and was unreliable, highly prejudicial, and confusing.  He also argues that much of Angelika

23  K.'s testimony concerned events other than sexual molestation, and constituted an improper and

24  irrelevant attempt to portray him as a bad parent and a violent person.  Petitioner summarizes his

25  claim as follows:

26  ////

7

> Although [petitioner] was charged with two counts of molestation of Irina K., nearly half of the evidence presented concerned the uncharged allegations of Angelika K., whose testimony was admitted over [petitioner's] objection, as propensity evidence pursuant to Evidence Code, section 1108. The evidence was unreliable yet highly prejudicial because it was different than, and much more serious than, the conduct [petitioner] was alleged to have engaged in with Irina. The trial was transformed into a trial about Angelika's allegations rather than the actual charged offenses. The evidence should have been excluded.

*Id.* at 27.

In his traverse, petitioner argues that the prosecutor elicited testimony from Angelika describing acts that were unrelated to sexual abuse in an attempt to make the charges against him more believable. Dckt. No. 14 at 2. He argues that Angelika's testimony resulted from a "vindictive and harassing campaign" against him by Angelika's mother. *Id.* Petitioner points out that Angelika made her accusations against him only after he refused to allow her to get married. *Id.* at 4. He claims that Angelika's charges "came only with compelling motive to end parent control and live on her own and used CPS to intimidate me." *Id.* at 5. Petitioner further argues that Angelika's testimony became the central focus of the trial and developed into "'a trial within the trial,' precisely what Evidence Code Section 352 is designed to prevent." *Id.* at 7. Petitioner argues that the prosecutor improperly implied the jury should convict him of the present charges because he had escaped prosecution for what he had done to Angelika. *Id.* at 7. He argues that this contributed to the prejudicial effect of the other crimes evidence. *Id.* Petitioner also states that he had witnesses who were willing to testify in his favor, but they were "unable to meet [his] public defender who made himself unavailable." *Id.* at 1.

In the last reasoned decision on petitioner's due process claims, the California Court of Appeal denied relief with the following reasoning:

### Admission Of Molestation Evidence

> On appeal, defendant contends the trial court abused its discretion in admitting evidence of A.'s allegations of molestation against defendant. We disagree.

8

Section 1108, subdivision (a), provides, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Section 352, in turn, provides, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In evaluating the probative value of other sex offense evidence under section 352, courts look to the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the extent the other offense evidence came from independent sources.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 917, 89 Cal.Rptr.2d 847, 986 P.2d 182; *People v. Branch* (2001) 91 Cal.App.4th 274, 285-286, 109 Cal.Rptr.2d 870.)  Courts must then balance the probative value of the evidence against its prejudicial effect under four factors: (1) the inflammatory nature of the evidence; (2) the probability of confusing the jury; (3) the remoteness of the prior offense; and (4) the amount of time consumed in introducing and refuting the evidence (the *Harris* factors).  (*People v. Harris* (1998) 60 Cal.App.4th 727, 737-741, 70 Cal.Rptr.2d 689.)  We will not disturb a trial court's exercise of discretion under section 352 unless it is shown the trial court exercised it "'"in an arbitrary, capricious or patently absurd manner."'"  (*People v. Frye* (1998) 18 Cal.4th 894, 948, 77 Cal.Rptr.2d 25, 959 P.2d 183.)

**A**

**The Evidence Of Defendant's Uncharged Molestation Had Substantial Probative Value**

The evidence of defendant's uncharged molestation of A. had substantial probative value to the charged offenses.  Defendant argues that "there was little similarity between [A.]'s specific molestation allegations and those of [minor]."  On the contrary, the molestations of minor and A. were significantly similar.  Both victims were young girls at the time of the molestation.  In both cases, the victims knew defendant, and defendant occupied a position of authority and trust with the girls.  Defendant also slept in the same bed as the victims during the time of the molestations.  Moreover, the nature of the sexual acts was similar for both victims in that defendant put his hands in their underwear and touched their vaginas.

Defendant further contends the "nature of the alleged attraction [between the two victims] was completely different" because minor was six years old at the time of her alleged molestation in

9

contrast to A., who was 12 or 13 years old and "'beginning to mature'" when her alleged molestation began.  This contention is without merit.  While some dissimilarities between the two alleged molestations exist, the two offenses "need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101" in order to admit evidence of the uncharged offense.  (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41, 107 Cal.Rptr.2d 100.)  "It is enough the charged and uncharged offenses are sex offenses as defined in section 1108."  (*Frazier*, at pp. 40-41, 107 Cal.Rptr.2d 100.)  Here, although the nature of the two molestations is not identical, they constitute sex offenses under section 1108.

Moreover, the alleged molestations of A. and minor occurred relatively close in time.  Minor was molested in 1996, and A.'s molestation started in 1998.  The probative value of the uncharged molestation evidence is also enhanced because the evidence came from independent sources.  Minor and A. both testified that A. never told minor that defendant touched her sexually.  A. also testified that she had never told anyone in minor's family about her molestation, and minor never told her that defendant had molested her.  In addition, A. spoke with the police regarding her molestation approximately four or five years prior to the current trial, and she was first contacted regarding this case a year before trial.  Thus, the uncharged offense was substantially similar to the charged offense, the charged and uncharged offenses occurred close in time, and the uncharged offense evidence came from independent sources; as such, the uncharged molestation evidence was highly probative.

**B**

**The Uncharged Offense Evidence Was Not Unduly Prejudicial**

We now balance the probative value of the uncharged offense evidence against its prejudicial effect under the *Harris* factors.  Defendant would have us find an abuse of discretion based on our opinion in *People v. Harris, supra,* 60 Cal.App.4th at page 727, 70 Cal.Rptr.2d 689.  Specifically, defendant claims that this case "clearly raises all the red flags identified in *Harris*."  Defendant's reliance on *Harris* is misplaced because *Harris* bears little resemblance to the case at hand.

In *Harris*, the prosecution introduced evidence that the defendant had brutally raped a young woman 23 years before the commission of the charged offenses.  (*People v. Harris, supra*, 60 Cal.App.4th at pp. 733-734, 70 Cal.Rptr.2d 689.)  The defendant in that case had led an unblemished life since his release on parole, and at the time of trial he was 52 years old and a mental health nurse.  A jury found him guilty of several sexual offenses involving two patients.  This court wrote, "[t]he charged crimes involving a breach of trust

10

and the 'taking advantage' of two emotionally and physically vulnerable women are of a significantly different nature and quality than the violent and perverse attack on a stranger that was described to the jury." (*Id.* at pp. 730-733, 738, 739, 70 Cal.Rptr.2d 689.)  Thus, we reversed the judgment because the prior offense evidence was "remote, inflammatory and nearly irrelevant and likely to confuse the jury." (*Id.* at p. 741, 70 Cal.Rptr.2d 689.)

**1. The Uncharged Offense Evidence Was Not More Inflammatory Than The Charged Offense**

Defendant contends the evidence of A.'s allegations were highly inflammatory.  This contention is without merit.  In determining whether the uncharged offense is more inflammatory than the charged offense, the uncharged offense evidence must be "no stronger and no more inflammatory than the testimony concerning the charged offenses ." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405, 27 Cal.Rptr.2d 646, 867 P.2d 757.)

Here, the alleged inflammatory nature of the prior uncharged molestation involving A. is completely distinguishable from the circumstances in *Harris*.  The prior and charged offenses discussed in *Harris* were significantly different in nature and quality. (*People v. Harris, supra*, 60 Cal.App.4th at p. 738, 70 Cal.Rptr.2d 689.)  The Harris prior offense involved "a viciously beaten and bloody victim," in contrast to the charged offenses that at worst involved defendant licking and fondling an "incapacitated woman and a former sexual partner." (*Ibid.*)  Further, the jury in that case heard an incomplete and distorted description of the prior offense.  Thus, this court, in *Harris*, concluded the prior offense evidence was "inflammatory in the extreme." (*Ibid.*)

The molestations of A. and minor were substantially similar in that both victims were young girls at the time of the molestations, and defendant molested them by inserting his hands into their underwear and touching their vaginas.  Additionally, in contrast to *Harris*, both the uncharged and charged offenses here involved defendant molesting a child while he was in a position of authority and trust, and the jury received an accurate depiction of the alleged uncharged acts from A. and Detective Dewante.  Consequently, we find the evidence of A.'s molestation was no more inflammatory than the evidence of the charged molestation, and such evidence was clearly not "inflammatory in the extreme " as in *Harris*.

Defendant also contends that A.'s testimony of being physically and psychologically abused by defendant rendered the evidence highly inflammatory.  As explained below, since this claim was not preserved for appeal, we will not address it.

////

11

**2. The Uncharged Offense Evidence Did Not Likely Confuse The Jury**

Defendant contends the prosecutor's use and focus on A.'s molestation confused the jury because it urged the jury to convict defendant for the prior uncharged offense.  We disagree.

We note the prejudicial effect of the uncharged offense evidence does heighten when the uncharged offense did not result in a criminal conviction.  (*People v. Ewoldt, supra*, 7 Cal.4th at p. 405, 27 Cal.Rptr.2d 646, 867 P.2d 757.)  In these circumstances, "the jury might have been inclined to punish defendant for the uncharged offenses . . . and increased the likelihood of 'confusing the issues' (citation), because the jury had to determine whether the uncharged offenses had occurred." (*Ibid.*)  Here, Detective Dewante, who interviewed A. regarding her molestation, testified that A.'s case was closed due to lack of corroboration.  Therefore, the jury was aware defendant was not convicted for molesting A., and it is plausible the jury might have wanted to punish defendant for the prior uncharged molestation of A.

Nonetheless, we find nothing in this record to suggest the admission of the uncharged offense evidence confused the jury.  Here, the risk of confusion was counterbalanced by the jury instructions on reasonable doubt, elements of the charged offenses, and the proper burden of proof for the uncharged offense.  The trial court further instructed the jury that "[i]f you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence."  Moreover, the only jury questions or requests during deliberations involved the charged offense and minor's testimony.  Thus, we "presume the jury adhered to the admonitions" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1277, 103 Cal.Rptr.3d 633), and, on this record, we conclude the jury was not likely confused by the admission of the uncharged molestation evidence.

**3. The Presentation Of The Uncharged Offense Evidence Did Not Consume An Undue Amount of Time**

Finally, we look to the potential undue consumption of time in presenting this evidence.  Defendant contends that "there was manifestly an undue consumption of time," and "the other acts testimony completely overwhelmed the underlying case."  We find defendant's contention unavailing.  We review the trial court's discretion at the time the objection was made and will not consider any subsequent matters that were not objected to at trial.  (*See People v. Berryman* (1993) 6 Cal.4th 1048, 1070, 25 Cal.Rptr.2d 867, 864 P.2d 40, *overruled on another ground* in *People v. Hill* (1998) 17 Cal.4th 800, 822-823, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

In his in limine motion, defendant argued that the prior offense evidence would "take away from the act at issue in this trial as there will be significant argument and examination of the witnesses due to the very weak nature of the evidence" against defendant, and the jury would "spend a significant portion of time debating the evidence of the prior."  During the hearing on in limine motions, the trial court considered the possibility of undue consumption of time resulting from the admission of the prior uncharged molestation evidence in its section 352 analysis and concluded that undue consumption of time and other section 352 issues did not "come up in such a level that they substantially outweigh the probative value ."  Thus, the trial court explicitly considered and rejected the possibility of undue consumption of time.

Further, A.'s testimony took up 68 pages of the 577- page reporter's transcript (direct, 34 pages; cross, 32 pages; redirect, 1 page; and recross, 1 page).  Detective Dewante also testified to her investigation of A.'s allegations, which took up approximately 17 pages of the reporter's transcript (direct, 7 pages; cross-examination, 7 pages; redirect, 2 pages; and recross, 1 page).  Due to the high probative value of the evidence, we cannot conclude the evidence of the uncharged molestation allegations consumed a significant amount of time as to constitute an undue consumption of time.  The trial court committed no error.

After reviewing all the factors, we conclude the trial court did not act in an arbitrary, capricious, or patently absurd manner.  Thus, the trial court did not abuse its discretion in admitting evidence of defendant's uncharged sex offense involving A.

**II**

**Evidence Of Physical And Psychological Abuse**

Section 353 provides, "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless" an objection or a motion was timely made.  It is important the objection "fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling."  (*People v. Partida* (2005) 37 Cal.4th 428, 435, 35 Cal.Rptr.3d 644, 122 P.3d 765.)  Further, "[a] reviewing court 'focuses on the ruling itself and the record on which it was made.  It does not look to subsequent matters. . . .'"  (*People v. Berryman, supra*, 6 Cal.4th at p. 1070, 25 Cal.Rptr.2d 867, 864 P.2d 40.)

Defendant argues for the first time on appeal that A.'s testimony regarding defendant's physical and psychological abuse was

13

1    highly inflammatory.  According to defendant, A.'s testimony
2    painted him "as violent and vindictive and a terrible parent but had
     nothing to do with whether he was a molester."  While defendant
     made a timely objection to the admission of the prior molestation
3    evidence involving A. in his in limine motions, he did not
     challenge the evidence on the basis he now contends.
4    Consequently, the evidence of defendant's physical and
     psychological abuse of A. was not before the trial court when it
5    made its pretrial ruling to admit the uncharged molestation
     evidence, and since defendant did not object to this evidence at
6    trial, we will not consider his new argument on review.

7    **DISPOSITION**

8            The judgment is affirmed.

9    Opinion at 5-14.

10           The question whether evidence of prior uncharged acts was properly admitted under

11   California law is not cognizable in this federal habeas corpus proceeding.  *Estelle*, 502 U.S. at 67

12   (1991).  The only question before this court is whether the trial court committed an error that

13   rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.  *Id.*

14   *See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is

15   whether the state proceedings satisfied due process; the presence or absence of a state law

16   violation is largely beside the point").

17           As set forth above, in order to obtain federal habeas relief on his due process claims,

18   petitioner must establish that the decision of the California Court of Appeal was contrary to, or

19   involved an unreasonable application of, clearly established United States Supreme Court

20   authority.  28 U.S.C. § 2254(d).  The United States Supreme Court "has never expressly held

21   that it violates due process to admit other crimes evidence for the purpose of showing conduct in

22   conformity therewith, or that it violates due process to admit other crimes evidence for other

23   purposes without an instruction limiting the jury's consideration of the evidence to such

24   purposes."  *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other*

25   *grounds* by *Woodford v. Garceau*, 538 U.S. 202 (2003).  In fact, the Supreme Court has

26   expressly left open this question.  *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach

                                                      14

the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Because the state court's rejection of petitioner's due process claim is not contrary to United States Supreme Court precedent, petitioner is not entitled to federal habeas relief under AEDPA. *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted contrary to clearly established United States Supreme Court precedent when it determined that the propensity evidence introduced against the defendant did not violate his right to due process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the due process clause).

Further, any error in admitting the testimony of Angelika K. regarding petitioner's prior uncharged acts of sexual misconduct did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See also Penry v. Johnson*, 532 U.S. 782, 793-96 (2001). The record reflects that the state trial judge struck a reasonable balance between petitioner's rights and the clear intent of the California legislature that evidence of prior similar acts be admitted in sexual offense prosecutions. The trial court held a hearing on petitioner's pre-trial in limine motion to exclude evidence of petitioner's uncharged acts of sexual molestation involving Angelika K. and concluded that the challenged evidence was relevant, appropriate, and allowed by California law, and that its probative value outweighed its prejudicial effect. Resp.'s Lodg. Doc. 8 (Reporter's Transcript on Appeal (hereinafter RT), at 7-8. These conclusions were not objectively unreasonable.

////

1    Further, the jury instructions did not compel the jury to draw an inference of propensity –

2 they simply allowed it.  The trial court instructed the jury at the close of the evidence that if they

3 found petitioner had committed the prior sexual offenses they could, but were not required to,

4 infer that he had a disposition to commit sexual offenses.  *Id.* at 471.  The jury was also

5 instructed that if they found that petitioner had such a disposition, they could, but were not

6 required to, infer that he was likely to have committed the charged offenses.  *Id.*  The jury was

7 directed that it should not consider petitioner's prior conduct, or evidence thereof, as proof that

8 petitioner committed the crimes charged in the information.  *Id.*  In addition, the jury instructions

9 as a whole correctly informed petitioner's jury that the prosecution had the burden of proving all

10 elements of the crimes against petitioner beyond a reasonable doubt.  *Id.*  The jury is presumed

11 to have followed all of these instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown*

12 *v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007).[5]

13    The admission of petitioner's prior acts of sexual misconduct did not violate any right

14 clearly established by United States Supreme Court precedent or result in prejudice under the

15 circumstances of this case.  Accordingly, petitioner is not entitled to relief on this due process

16 claim.

17    Petitioner has also failed to demonstrate a due process violation with respect to the

18 admission into evidence of his prior acts of physical and psychological abuse, such as Angelika's

19 allegations that petitioner beat her, told her that her mother was a prostitute and was dead, and

20 refused to give her the documentation she needed to get her United States citizenship.  The

21 United States Supreme Court has declined "to impose constitutional constraints on ordinary

22 evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  "The

23

24    [5] The Ninth Circuit has observed that "[n]othing in the text of § 1108 suggests that the
admissible propensity evidence would be sufficient, by itself, to convict a person of any crime.
25 Section 1108 relates to admissibility, not sufficiency." *Schroeder v. Tilton*, 493 F.3d 1083, 1088
(9th Cir. 2007) (admission of evidence of defendant's prior sex crimes did not violate Ex Post
26 Facto Clause).

1    introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not

2    amount to a violation of due process unless the evidence is so extremely unfair that its admission

3    violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.

4    1998).  The Supreme Court has made clear that federal habeas power does not allow granting

5    relief on the grounds that the state trial court incorrectly interpreted the state evidence code in

6    ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72.  Rather, as noted above, the error

7    must have rendered petitioner's trial fundamentally unfair.  In this context, the Supreme Court

8    has defined the category of infractions that violate fundamental fairness very narrowly, limiting

9    them to specific guarantees enumerated in the bill of rights.  *Id.*  For example, the Supreme Court

10   has barred the introduction of evidence in state court criminal proceedings that violated the

11   Fourth Amendment (search and seizure), *Mapp v. Ohio*, 367 U.S. 643 (1961); Fifth Amendment

12   (confessions), *Miranda v. Arizona*, 384 U.S. 436 (1966); Sixth Amendment (Confrontation

13   Clause), *Crawford v. Washington*, 541 U.S. 36 (2004); and Sixth Amendment right to counsel

14   *Burgett v. Texas*, 389 U.S. 109 (1967).

15          The trial court's admission of Angelika K's testimony regarding petitioner's prior acts of

16   physical and psychological abuse did not impact any of the constitutional guarantees embodied

17   in the bill of rights.  In this regard, the state court record reflects that petitioner's trial counsel

18   conducted extensive cross-examination of Angelika regarding her allegations against petitioner.

19   *See* RT at 253-84, 286.  Accordingly, there is no basis for a finding that the trial court violated

20   petitioner's right to confront Angelika K or to the effective assistance of counsel when it

21   admitted her testimony into evidence.  "A writ of habeas corpus will be granted for an erroneous

22   admission of evidence only where the "testimony is almost entirely unreliable and . . . the

23   factfinder and the adversary system will not be competent to uncover, recognize, and take due

24   account of its shortcomings." *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting

25   *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Petitioner has failed to make this showing.

26   Accordingly, he is not entitled to relief on this claim.

**IV. Conclusion**

Accordingly, it is hereby ORDERED that James D. Hartley, Warden, is substituted as respondent in this matter.

Further, for the foregoing reasons, it is hereby RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:   April 5, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE